253 F.3d 520 (9th Cir. 2001)
 IN RE: FIRST T.D. & INVESTMENT, INC.; JOINT DEVELOPMENT, INC., DEBTORS.
R. TODD NEILSON, CHAPTER 7 TRUSTEE, PLAINTIFF-APPELLEE,
v.
ANGELA SHIU RONG CHANG; ANGELA SHIU RONG CHANG, F/B/O THE ANGELA CHANG FAMILY TRUST; CYNTHIA L. LIEN; GALAXY INDUSTRIAL CORPORATION; ANNA P. JEN KIN; WEN F. KUO; TSU C. KUO; SZE MING MA; CHENG H. MA; IRENE WERNER; HAITANG LI; RU LIN WU; HONG YANG; XIAO PING SUN; STEVE PO-AN MU; YANG YING CHANG MU; RITA CHWEN-YI TSAI; PEI TI WAN, DEFENDANTS-APPELLANTS.
R. TODD NEILSON, CHAPTER 7 TRUSTEE, PLAINTIFF-APPELLEE,
v.
ANGELA SHIU RONG CHANG; CYNTHIA L. LIEN; GALAXY INDUSTRIAL CORPORATION; ANNA P. JEN KIN; WEN F. KUO; TSU C. KUO; SZE MING MA; CHENG H. MA; IRENE WERNER; HAITANG LI; RU LIN WU; HONG YANG; XIAO PING SUN; STEVE PO-AN MU; YANG YING CHANG MU; RITA CHWEN-YI TSAI; PEI TI WAN; MING YENG WANG; PING YUAN LIU; CHING I LIU; CATHERINE CHANG; PETER L. CHANG; JULIE SHIH; SIMON SHIH; JULIJANTI LUCIE MOEIS; LIN CHU TSAI; HSIU CHUAN WANG CHEN; CHANG A LAN HUANG; HSIU YING KUO; HSIEN HUEI LIN; TSAI CHU LIN; CHIEN YUEH O LIEN; ACCURATE ESCROW, INC.; ANGELA SHIU RONG CHANG, F/B/O THE ANGELA CHANG FAMILY TRUST, DEFENDANTS-APPELLANTS.
 Nos. 99-55851, 99-55840
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted November 14, 2000
Filed June 19, 2001
 
 [Copyrighted Material Omitted]
 Gregory M. Salvato, Parker, Milliken, Clark, O'Hara & Samuelian, Los Angeles, California, for defendants-appellants Chang et al.
 Michael H. Weiss, Weiss Scolney Spees, Llp, Los Angeles, California, for plaintiff-appellee R. Todd Neilson.
 Appeal from the United States District Court for the Central District of California Dean D. Pregerson, District Judge, Presiding, D.C. No. CV 98-3004 DDP; Bankr. Adv. No. AD 96-03493 TD; D.C. No. CV 98-8161 DDP; Bankr. Adv. No. AD 96-03493 TD
 Before: William C. Canby, Jr., M. Margaret McKeown, and Richard A. Paez, Circuit Judges.
 
 Paez, Circuit Judge
 
 1
 These two consolidated appeals concern a real estate mortgage investment scheme perpetrated by Debtors, First T.D. & Investment, Inc. ("FTD") and Joint Development, Inc. ("JDI").[1] The trustee of their consolidated Chapter 7 bankruptcy estates, Appellee R. Todd Neilson ("the Trustee"), filed an adversary action against Defendants, 132 investors in FTD,[2] alleging that collateral notes and trust deeds ("security instruments") assigned by FTD to Defendants as security for their investments did not perfect their interests because Defendants did not have possession of the security instruments.
 
 
 2
 Twenty years ago, in a case with facts very similar to those here, we held that such security interests could not be perfected under California law without actual possession of the security instruments. See Greiner v. Wilke (In re Staff Mortgage & Inv. Corp.), 625 F.2d 281, 283 (9th Cir. 1980) ("Staff Mortgage") (citing Cal. Comm. Code § 9304(1)). More than a decade later, the California Legislature created an exception to this rule by enacting California Business and Professions Code § 10233.2, which, under limited circumstances, permits perfection without possession of the security instruments.
 
 
 3
 At issue here is whether the exception created by§ 10233.2 applies to the transactions between Defendants and FTD, such that Defendants' security interests are deemed perfected. The bankruptcy court found that § 10233.2 applies and granted summary judgment in favor of those Defendants who filed an answer in the adversary proceeding ("Answering Defendants"). The district court reversed. We have jurisdiction pursuant to 28 U.S.C. § 158(d). We hold that§ 10233.2 applies to Defendants' security interests, and therefore the Trustee's attempt to avoid Defendants' priority status must fail. We also reject the Trustee's argument that we should impose a constructive trust to circumvent § 10233.2. Accordingly, we reverse in Case No. 99-55851 ("Chang Appeal").
 
 
 4
 In a related appeal, Case No. 99-55840 ("Appeal from Default Judgments"), Defendants who defaulted in the adversary proceeding ("Defaulting Defendants") challenge the bankruptcy court's entry of final default judgments under Federal Rule of Civil Procedure 54(b). Defaulting Defendants argue that the final default judgments were inconsistent with the bankruptcy court's earlier summary judgment ruling that Answering Defendants' security interests were deemed perfected under § 10233.2. Because we hold that§ 10233.2 applies to the investor transactions at issue here, we conclude that the bankruptcy court abused its discretion and reverse the judgment of the district court with instructions to reverse the entry of final default judgments.
 
 I. FACTUAL BACKGROUND
 
 5
 Prior to its involuntary bankruptcy, FTD was in the business of investing in real estate mortgages. It initiated and purchased home loans evidenced by collateral notes and secured by trust deeds on real property owned by the borrowers ("borrowers").
 
 
 6
 FTD financed its investment scheme with approximately $35 million borrowed from hundreds of individual investors, typically Chinese-American immigrants in Southern California ("investors"). FTD secured its loans from investors by assigning to them the collateral notes and trust deeds ("security instruments") from its home loan portfolio. FTD recorded the assignments with the county recorder where the property was located, but FTD maintained possession at all times of the collateral notes and trust deeds.[3]
 
 
 7
 Additionally, FTD entered into a "Servicing Agreement" with each investor that authorized FTD, as a "real estate broker" acting as a "servicing agent," to collect all loan payments from borrowers and to take other actions necessary or convenient to servicing of the note. While many investors at the time mistakenly believed they had actually purchased the trust deeds, Defendants accept, for purposes of this appeal, that they were merely assigned the trust deeds in a security transaction.[4]
 
 
 8
 FTD, in violation of California law, commingled funds received from investors and borrowers, using funds from any source for any and all purposes to continue its operations. FTD frequently used payments from one investor to pay interest and other payments to another investor -- a classic Ponzi scheme.
 
 
 9
 The investment scheme ultimately unraveled. Petitions for involuntary bankruptcy against FTD and JDI were filed under Chapter 11 of the U.S. Bankruptcy Code on October 21, 1994, and November 2, 1994, respectively. The cases were subsequently consolidated and converted to Chapter 7 proceedings in April 1995. Appellee R. Todd Neilson was appointed as trustee to manage the consolidated bankruptcy estates.
 
 II. PROCEDURAL HISTORY
 A. Chang Appeal (No. 99-55851)
 
 10
 Seeking to treat all creditors on an equal basis for asset distribution, the Trustee filed an adversary action in bankruptcy court against 132 of the investors who held recorded assignments of specific trust deeds ("Defendants"). The Trustee alleged that Defendants' security interests were unperfected under California law because Defendants never obtained possession of the original collateral notes or trust deeds. Under 11 U.S.C. § 544(a), unperfected security interests are avoidable and can be relegated to the status of general unsecured claims. In this way, the Trustee sought to prevent Defendants from receiving priority in the distribution of FTD and JDI's assets.
 
 
 11
 On cross-motions for summary judgment with respect to 18 of the Answering Defendants, the bankruptcy court entered summary judgment on January 23, 1998, in their favor and against the Trustee. The bankruptcy court held that the transactions between FTD and Answering Defendants fell within the scope of § 10233.2 and thus, although they lacked actual possession of the security instruments, Answering Defendants' interests were deemed perfected. Chang , 218 B.R. at 94-95.
 
 
 12
 Because the issue of perfection under § 10233.2 was of such importance to the entire adversary proceeding, the bankruptcy court entered a final judgment pursuant to Federal Rule of Civil Procedure 54(b). The Trustee appealed to the district court. The district court reversed, holding that the transactions at issue were not within the scope of § 10233.2.
 
 
 13
 B. Appeal of Default Judgments (No. 99-55840)
 
 
 14
 On April 30, 1997, prior to entry of summary judgment for Answering Defendants, the Trustee moved for entry of default and default judgment against the 88 Defaulting Defendants who had not answered the complaint in the above adversary proceeding.[5] The bankruptcy court granted the Trustee's motion, but the interlocutory order was not appealable.
 
 
 15
 In May 1998, four months after the bankruptcy court entered summary judgment for Answering Defendants, the Trustee moved to certify the default judgments as final under Federal Rule of Civil Procedure 54(b). Defaulting Defendants objected to entry of final judgments because the judgments were inconsistent with the bankruptcy court's earlier summary judgment ruling, holding that the security interests of Answering Defendants were perfected under § 10233.2. Chang, 218 B.R. at 95. In granting the Trustee's motion to certify, the bankruptcy court stated in the final default judgments that: "The Defaulting Defendants failed to perfect their security interest in the Collateral Notes and Deeds of Trust by failing to obtain possession of same."[6] Notwithstanding Defaulting Defendants' objections to the inconsistent rulings, the bankruptcy court entered the final judgments on June 1, 1998.
 
 
 16
 Defaulting Defendants appealed the entry of the final default judgments to the district court, which affirmed, citing its contemporaneous ruling reversing the bankruptcy court on the applicability of § 10233.2 to Answering Defendants.
 
 III. DISCUSSION
 A. Chang Appeal (No. 99-55851)
 
 17
 Defendants contend that § 10233.2 applies to their loan transactions with FTD, and under the provisions of that statute, their security interests are deemed perfected. They seek reversal of the district court's decision to the contrary.
 
 
 18
 We review de novo a district court's judgment on appeal from a bankruptcy court. Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1084 n.9 (9th Cir. 2000) (en banc). We apply the same standard of review applied by the district court, reviewing the bankruptcy court's legal conclusions de novo and its factual determinations for clear error. Beaupied v. Chang (In re Chang), 163 F.3d 1138, 1140 (9th Cir. 1998), cert. denied, 526 U.S. 1149 (1999).
 
 
 19
 Relying on the text of the statute and established rules of statutory construction under California law, we conclude that § 10233.2 applies to the loan transactions in question, and accordingly, that Defendants' security interests are deemed perfected. The statute's legislative history provides further support for our conclusion.
 
 1. Overview
 
 20
 Section 544 of the Bankruptcy Code, the "strong-arm clause," grants a trustee in bankruptcy "the rights and powers of a hypothetical creditor who obtained a judicial lien on all of the property in the estate at the date the petition in bankruptcy was filed." In re Commercial W. Fin. Corp., 761 F.2d 1329, 1331 n.2 (9th Cir. 1985) (citing 11 U.S.C.§ 544(a)(1)). "One of these powers is the ability to take priority over or `avoid' security interests that are unperfected under applicable state law . . . ." Id. Avoiding such interests relegates them to the status of a general unsecured claim. See 5 Collier on Bankruptcy ¶¶ 544.02, 544.05 (Lawrence P. King ed., 15th ed. rev. 2000).
 
 
 21
 The general rule in California requires the secured party to take possession of the security instrument in order to perfect the security interest. Cal. Com. Code § 9304(1). Section 10233.2, enacted in 1992 through California Senate Bill 1520, creates an exception to the normal rule requiring possession in certain types of transactions involving real estate brokers. 1992 Cal. Legis. Serv. Ch. 158 (West). Section 10233.2 deems a security interest perfected, without possession of the security instruments, provided five requirements are met: (1) a "broker, acting within the meaning of" California Business and Professions Code §§ 10131 or 10131.1 possesses the security instrument; (2) the broker has "arranged a loan" or "sold a promissory note or any interest therein"; (3) the broker "undertakes to service the promissory note"; (4) the trust deed or collateral documents in favor of the lender are"recorded in the office of the county recorder in the county in which the security property is located"; and (5) "the note is made payable to the lender or is endorsed or assigned to the purchaser."[7]
 
 
 22
 The Trustee does not dispute that the transactions between FTD and Defendants satisfy requirements one, three, four, and five. The Trustee concedes that FTD is a real estate broker within the meaning of §§ 10131 and 10131.1. The only dispute concerns whether FTD "arranged a loan " or "sold a promissory note or any interest therein" in its transactions with investors.
 
 
 23
 With the exception of the bankruptcy and district courts below, no state or federal court has had occasion to interpret § 10233.2. We therefore apply California's rules of statutory construction. See Fed. Sav. & Loan Ins. Corp. v. Butler, 904 F.2d 505, 510 (9th Cir. 1990) (construing Cal. Civil Code § 877). California Code of Civil Procedure§ 1859 provides that "[i]n the construction of a statute the intention of the Legislature . . . is to be pursued, if possible." The California Supreme Court has declared that the "ultimate task" in statutory interpretation "is to ascertain the legislature's intent." People v. Massie, 19 Cal. 4th 550, 569, 967 P.2d 29, 41 (1998), cert. denied, 526 U.S. 1113 (1999)."Ordinarily, the words of the statute provide the most reliable indication of legislative intent." Pacific Gas & Elec. Co. v. County of Stanislaus, 16 Cal. 4th 1143, 1152, 947 P.2d 291, 297 (1997). Courts should give the language of the statute "its usual, ordinary import and accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose." Dyna-Med, Inc. v. Fair Employment & Hous. Comm'n, 43 Cal. 3d 1379, 1386-87, 743 P.2d 1323, 1326 (1987). When the wording of the statute is ambiguous, however, a court may consider extrinsic evidence of the legislature's intent, "including the statutory scheme of which the provision is a part, the history and background of the statute, the apparent purpose, and any considerations of constitutionality." Hughes v. Bd. of Architectural Exam'rs, 17 Cal. 4th 763, 776, 952 P.2d 641, 649 (1998).
 
 
 24
 The critical issue for our purposes in interpreting§ 10233.2 concerns the application of § 10131.1 to this statute, and specifically, its application to the word "sold" as used in "sold a promissory note or any interest therein" in § 10233.2. Section 10131.1 provides, in relevant part:
 
 
 25
 A real estate broker within the meaning of this part is also a person who engages as a principal in the business of buying from, selling to, or exchanging with the public, real property sales contracts or promissory notes secured directly or collaterally by liens on real property, or who makes agreements with the public for the collection of payments or for the performance of services in connection with real property sales contracts or promissory notes secured directly or collaterally by liens on real property.
 
 
 26
 As used in this section, "sale," "resale," and "exchange" include every disposition of any interest in a real property sales contract or promissory note secured directly or collaterally by a lien on real property, except the original issuance of a promissory note by a borrower or a real property sales contract by a vendor, either of which is to be secured directly by a lien on real property owned by the borrower or vendor.
 
 
 27
 We agree with the Trustee that the generally accepted definition of "sale" does not include the assignment of a security interest. See Milana v. Credit Disc. Co., 27 Cal. 2d 335, 339-40, 163 P.2d 869, 871 (1945); Golden State Lanes v. Fox, 232 Cal. App. 2d 135, 138, 42 Cal. Rptr. 568, 570 (1965); Black's Law Dictionary 1337 (6th ed. 1990) ("a `sale' is distinguished from a mortgage, in that the former is a transfer of the absolute property in the goods for a price, whereas a mortgage is at most a conditional sale of property as security for the payment of a debt or performance of some other obligation, subject to the condition that on performance title shall revest in the mortgagor").
 
 
 28
 Nonetheless, § 10131.1 provides an expansive definition of "sale," which "include[s] every disposition of any interest in a real property sales contract or promissory note secured directly or collaterally by a lien on real property" (emphasis added). We previously have held that this definition of "sale" includes the assignment of security interests by a real estate broker to investors. See Lucas v. Thomas (In re Thomas), 765 F.2d 926, 931 (9th Cir. 1985) (transaction by which investors in sole proprietorship delivered money to owner of proprietorship, a licensed real estate broker, in exchange for which broker issued promissory notes secured by deeds of trust on two condominiums that broker owned is a "sale" within meaning of § 10131.1).
 
 
 29
 The outcome of this case turns on which definition of "sale" or "sold" the California Legislature intended to adopt when it included the phrase "sold a promissory note or any interest therein" in § 10233.2.[8] If it intended to adopt the conventional definition of "sold" (and thus limit the application of § 10131.1 exclusively to the term "broker" in § 10233.2), then § 10233.2 would not apply to FTD's assignment of security interests to Defendants. Consequently, Defendants' interests would be unperfected under California law, and the Trustee could avoid them under 11 U.S.C. § 544. If, however, the legislature intended to adopt the more expansive definition of "sale" from § 10131.1, then § 10233.2 would apply to the assignment of security interests, rendering Defendants' interests perfected and therefore not avoidable by the Trustee.
 
 2. Statutory Language
 
 30
 The text of § 10233.2 suggests that it adopts the definitions of both "broker" and "sold" provided by§ 10131.1. Section 10233.2 states, in relevant part: "when a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, has arranged a loan or sold a promissory note or any interest therein." Although placement of the clause immediately after "broker" might normally indicate that the clause modifies only this term, use of the words"acting within" suggests that §§ 10131 and 10131.1 apply not only to define broker but also to define the type of broker transactions -- i.e., "arranged a loan" or "sold a promissory note or any interest therein" -- covered by § 10233.2.
 
 
 31
 We see no reason why the California Legislature would incorporate two different definitions of "sold " into § 10233.2: a broad one to define broker and a narrow one to define the type of broker transactions covered under the statute. "[I]t is generally presumed that when a word is used in a particular sense in one part of a statute, it is intended to have the same meaning if it appears in another part of the same statute." People v. Dillon, 34 Cal. 3d 441, 467, 668 P.2d 697, 712 (1983). It follows that the legislature intended to use a single definition of "sale" throughout § 10233.2, as applied to both the term "broker" and the term "sold."
 
 
 32
 We find unconvincing the Trustee's argument that the restrictive language of § 10131.1 ("As used in this section . . .") limits the expansive definition of sale to "broker." Such restrictive language cannot bar a newer statute, such as § 10233.2, from incorporating through reference the definition in an older statute. See Collection Bureau v. Rumsey, 24 Cal. 4th 301, 310, 6 P.3d 713, 719 (2000) ("If conflicting statutes cannot be reconciled, later enactments supersede earlier ones . . . .") Here, the California Legislature's use of the phrase "acting within the meaning of [§§ 10131 or 10131.1]" evidences its intent to use the same definition throughout § 10233.2.
 
 
 33
 We also reject the Trustee's argument that the expansive definition of sale would render the terms "arranged a loan" and "sold a promissory note" superfluous. Without these terms, all types of broker transactions would be included within the scope of § 10233.2, including situations where a broker services a note without having participated in the origination, assignment, or sale of the note. The terms"arranged" and "sold," even when broadly defined, restrict the universe of included broker transactions and are therefore not redundant.
 
 
 34
 For all these reasons, we read § 10233.2 to incorporate the definition of "sale" in § 10131.1 to apply to both "broker" and "sold" in § 10233.2.
 
 3. Legislative History
 
 35
 The legislative history of § 10233.2 provides further support for our conclusion that this statute applies to the transactions between FTD and Defendants.
 
 
 36
 Section 10233.2 was enacted in 1992 through California Senate Bill 1520, under sponsorship by the California Independent Mortgage Brokers Association ("CIMBA"). 1992 Cal. Legis. Serv. Ch. 158 (West). The Senate Committee on Business and Professions described the bill as follows:
 
 
 37
 This bill is sponsored by the California Independent Mortgage Brokers Association (CIMBA) to specify that the technical requirements of the Commercial Code for perfection of a lender's real property security interest . . . are deemed to have been completed under specified conditions where the real estate broker maintains physical possession of the note under a servicing contract in accordance with provisions of the Real Estate Law.
 
 
 38
 Committee Report for 1991 California Senate Bill No. 1520, Senate Committee on Bus. & Professions, 1991-92 Reg. Sess. 2 (Apr. 27, 1992) ("Committee Hearing"). This description alone is of little help because it refers merely to"specified conditions," which, when defined, use the same"arranged" and "sold" language as in the statute. See id.
 
 
 39
 The most revealing passages of the legislative history are the references to our earlier decision in Staff Mortgage, 625 F.2d 281. The real estate investment scheme at issue in Staff Mortgage strongly resembles the one here.[9] Appellants in Staff Mortgage argued that recordation of the assignments should provide constructive possession of the trust deeds sufficient to perfect their security interests under California Commercial Code § 9304(1). Id. at 283. We held, however, that California law at that time was clear: "Perfection of a security interest in an instrument [could] only occur with the actual possession of the instrument by the secured party or by an agent or bailee on his behalf." Id. We commented that "[h]ad the legislature intended to allow perfection by methods proposed by appellants, they could have done so. " Id. at 284.
 
 
 40
 Twelve years later, CIMBA acted on this suggestion and sponsored Senate Bill 1520 to change the possession requirement to protect private lenders from loss of their security should the servicing broker file for bankruptcy. In a statement to the California Legislature in support of the bill, CIMBA wrote:
 
 
 41
 In the case of [In] Re Staff Mortgage and Inv. Corp., 625 F[.]2d 281, the court in denying that recording could perfect, said "Had the legislature intended to allow perfection (that way) . . . they could have done so." This bill follows that suggestion.
 
 
 42
 S.B. 1520 (Johnston), Delivery of Trust Deeds, A Statement of Support on Behalf of California Independent Mortgage Brokers Association (Apr. 21, 1992).
 
 
 43
 By itself, CIMBA's statement oF.Supp.ort is unhelpful since we may not assume that its intention in sponsoring the bill was the same as the legislature's intention in passing the bill. See Delaney v. Superior Court, 50 Cal. 3d 785, 801 n. 12, 789 P.2d 934, 943 n. 12 (1990) (courts may not "consider the motives or understandings of an individual legislator even if he or she authored the statute"). However, the Senate Committee on Business and Professions acknowledged CIMBA's position in support of the bill:
 
 
 44
 The sponsor notes that there have been several recent situations of the bankruptcy of the servicing mortgage loan broker where the bankruptcy court has held that the lender's loan is unsecured, and the lender is an unsecured creditor of the broker, only because the current technical requirement of the Commercial Code for delivery of the note to the lender has not occurred. In these cases, the lender loses, although the position of the borrower and the bankrupt servicing mortgage loan broker is unchanged. This bill was introduced to provide an exception to the technical delivery requirement in specified broker servicing situations that are in accordance with provisions of the real estate licensing laws.
 
 
 45
 Committee Hearing at 2. While the Committee does not cite Staff Mortgage, its reference to "several recent situations" noted by "[t]he sponsor" strongly suggests that Senate Bill 1520 was intended, at least in part, to eliminate the technical requirement of possession in situations like those in Staff Mortgage.
 
 
 46
 As noted above, the facts here are nearly identical to those in Staff Mortgage (where the bankrupt party borrowed money secured by assignment of promissory notes and recorded trust deeds). It follows that the legislature intended that § 10233.2 should apply here.
 
 
 47
 In sum, the text of § 10233.2 and its legislative history lead us to conclude that § 10233.2 incorporates the broad definition of "sale" from § 10131.1. We therefore hold that § 10233.2 applies to the transactions between Defendants and FTD. Defendants have perfected secured interests in the collateral notes and trust deeds, which the Trustee may not avoid under the "strong-arm clause" of 11 U.S.C.§ 544.
 
 4. Constructive Trust
 
 48
 We reject the Trustee's argument that, even if § 10233.2 applies, imposition of a constructive trust on the trust deeds under a policy of equitable distribution is warranted. "The extent of the Trustee's rights as a judicial lien creditor . . . is measured by the substantive law of the jurisdiction governing the property in question." 5 Collier on Bankruptcy ¶ 544.02, p. 544-5 (Lawrence P. King ed., 15th ed. rev. 2000). Nothing in California law supports imposing a constructive trust under these circumstances. The Trustee cannot avoid valid, perfected security interests.
 
 
 49
 Neither of the two cases cited by the Trustee support his argument here. The Trustee relies on Elliott v. Bumb, 356 F.2d 749, 755 (9th Cir. 1966), for the proposition that "[i]f state law is contrary to federal bankruptcy law, the state law must yield." Yet the Trustee fails to show how the perfection rules of § 10233.2 are contrary to federal bankruptcy law.
 
 
 50
 The other case the Trustee cites, Hatoff v. Lemons & Assocs., Inc. (In re Lemons & Assocs., Inc.), 67 B.R. 198 (Bankr. D. Nev. 1986), is no more helpful. Lemons involved a situation similar to the instant case, in which the debtor defrauded its investors and commingled their funds. Id. at 210-212. Unlike FTD, the debtor sold mortgage notes to investors but never transferred legal title to them. See id. at 209-10. The investors made an equitable claim for these notes, but the court refused to impose a "constructive trust" because no investor could trace his or her investment to any specific note. Id. at 213. Here, it may be true that Defendants cannot trace their investments to show that the funds they lent to FTD were used to purchase or originate the collateral notes assigned to them. But, unlike in Lemons, Defendants have recorded, perfected security interests in identified collateral notes and trust deeds. Defendants are not asking for an equitable remedy. Rather, it is the Trustee who seeks to impose a constructive trust to avoid the secured interests. Lemons provides no support for such relief.
 
 
 51
 B. Appeal from Default Judgments (No. 99-55840)
 
 
 52
 Having concluded that § 10233.2 applies to the transactions between investors and FTD, we next address whether the bankruptcy court properly certified the default judgments against Defaulting Defendants as final under Federal Rule of Civil Procedure 54(b).
 
 
 53
 Rule 54(b) specifies that "when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the . . . parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." We review a certification of an interlocutory judgment under Rule 54(b) for abuse of discretion. Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 797 (9th Cir. 1991).
 
 
 54
 We conclude that the bankruptcy court abused its discretion by certifying as final default judgments against Defaulting Defendants that were inconsistent with the bankruptcy court's earlier summary judgment ruling that the security interests of Answering Defendants were deemed perfected under § 10233.2.
 
 
 55
 The leading case on the subject of default judgments in actions involving multiple defendants is Frow v. De La Vega, 82 U.S. 552 (1872). The Court held in Frow that, where a complaint alleges that defendants are jointly liable and one of them defaults, judgment should not be entered against the defaulting defendant until the matter has been adjudicated with regard to all defendants.[10] Id. at 554. It follows that if an action against the answering defendants is decided in their favor, then the action should be dismissed against both answering and defaulting defendants. Id.
 
 
 56
 The Eleventh Circuit has extended the rule in Frow to apply to defendants who are similarly situated, even if not jointly and severally liable. See Gulf Coast Fans, Inc. v. Midwest Elecs. Imps., Inc., 740 F.2d 1499, 1512 (11th Cir. 1984); accord 10A Charles Alan Wright et al., Federal Practice and Procedure § 2690, (3d ed. 1998). The plaintiff in Gulf Coast was a distributor of ceiling fans that filed a lawsuit for breach of contract against both the U.S.-based importer and the Hong Kong-based exporter with which it did business. 740 F.2d at 1505. The plaintiff had obtained a default judgment against the exporter but lost at trial against the importer, when the jury found that it was the plaintiff who had breached the contract. Id. at 1505-06. The court noted that, under Frow, the plaintiff would not have been able to obtain a default judgment against the exporter had it claimed that the importer and exporter were jointly liable. Id. at 1512. Although defendants were not jointly liable, the court vacated the default judgment against the exporter because "[i]t would be incongruous and unfair to allow [the plaintiff] to collect a half million dollars from [the defaulting defendant] on a contract that a jury found was breached by [the plaintiff]." Id.
 
 
 57
 It would likewise be incongruous and unfair to allow the Trustee to prevail against Defaulting Defendants on a legal theory rejected by the bankruptcy court with regard to the Answering Defendants in the same action. The bankruptcy court justified the conflicting outcomes on the basis that FTD and Defendants were involved in many individual transactions, not simply one transaction with many parties. Nevertheless, each transaction between FTD and Defendants followed an identical pattern with almost identical legal documents. The Trustee filed a single complaint against all 132 investors. More importantly, the central legal issue concerning each transaction was the same. A result in which the bankruptcy court finds § 10233.2 applies to certain Defendants and not to others is both incongruous and unfair. We therefore hold that the bankruptcy court violated the Frow principle and abused its discretion by entering final default judgments, pursuant to Fed. R. Civ. P. 54(b), that directly contradicted its earlier ruling in the same action.[11]
 
 IV. CONCLUSION
 
 58
 For the foregoing reasons,
 
 
 59
 In Case No. 99-55851 ("Chang Appeal"), we reverse the judgment of the district court and remand with instructions to affirm the bankruptcy court's grant of summary judgment for Answering Defendants.
 
 
 60
 In Case No. 99-55840 ("Appeal from Default Judgments"), we reverse the judgment of the district court and remand with instructions to reverse the bankruptcy court's entry of final default judgment against Defaulting Defendants and remand for proceedings consistent with this opinion.
 
 
 61
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 There are four consolidated appeals involving Debtors FTD and JDI. We address two of them, Nos. 99-55840 and 99-55851, in this opinion. We address the other two, Nos. 99-55828 and 99-56060, in an unpublished memorandum filed concurrently with this opinion.
 
 
 [2]
 Defendants' transactions were primarily with FTD. Because the parties do not draw any meaningful distinction between FTD and JDI, we refer only to FTD unless otherwise noted.
 
 
 [3]
 The parties agree that "[t]he loans from the Defendants [investors] were documented by a Secured Promissory Note, a Corporation Assignment of Trust Deed, [a] Security Agreement and Pledge of FTD, an Assignment of Note By and Between FTD and the Defendant [investor], a Loan Servicing Agreement, and an unrecorded UCC-1 Financing Statement." Neilson v. Chang (In re First T.D. & Inv., Inc.), 218 B.R. 92, 94 (Bankr. C.D. Cal. 1998) (findings of fact and conclusions of law in support of summary judgment in favor of Defendants) ("Chang").
 
 
 [4]
 According to Defendants, investors were permitted to select from a list of trust deeds on specific properties, after receiving a prospectus, often written in Mandarin, containing an appraisal of the real property, legal description, property address, photographs of the property, and term sheets describing the interest rate, maturity date, and loan-to-value ratio for the particular proposed loan.
 
 
 [5]
 Only 32 of the 88 Defaulting Defendants have appealed to this court. They include some investors who had answered the complaint and defended the action, but who believed that specific judgments would impact their own lien interests.
 
 
 [6]
 The original default judgments contained the same statement. Upon granting the Trustee's motion to certify, the bankruptcy court added the following: "There being no just reason for delay, this judgment entered in favor of the Trustee is hereby deemed a final judgment upon its entry by the Court."
 
 
 [7]
 Cal. Bus. & Prof. Code § 10233.2 states in full:
 For the purposes of Division 3 (commencing with Section 3101) and Division 9 (commencing with Section 9101) of the Commercial Code, when a broker, acting within the meaning of subdivision (d) or (e) of Section 10131 or Section 10131.1, has arranged a loan or sold a promissory note or any interest therein, and thereafter undertakes to service the promissory note on behalf of the lender or purchaser in accordance with Section 10233, delivery, transfer, and perfection shall be deemed complete even if the broker retains possession of the note or collateral instruments and documents, provided that the deed of trust or an assignment of the deed of trust or collateral documents in favor of the lender or purchaser is recorded in the office of the county recorder in the county in which the security property is located, and the note is made payable to the lender or is endorsed or assigned to the purchaser.
 
 
 [8]
 The parties also dispute the meaning of the phrase "arranged a loan" in § 10233.2. Because we conclude that the phrase "sold a promissory note or any interest therein" includes the transactions between FTD and Defendants, we need not address the meaning of "arranged a loan."
 
 
 [9]
 The court described the facts in Staff Mortgage as follows:
 As a part of its business activity, the bankrupt, Staff Mortgage & Investment Corporation (Staff), would borrow money and execute its note to evidence the loan. To secure its loan, Staff would pledge one or more promissory notes secured by trust deeds which it had in its inventory. The promissory notes and trust deeds were assigned to the lenders. To effectuate the assignments, documents entitled "Collateral Assignment of Note" and "Corporation Assignment of Deed of Trust" were attached to the respective instruments. The "Corporation Assignment of Deed of Trust" was then recorded in the county wherein the real property covered by trust deed was located. The documents, except Staff's note to evidence the loan, remained in the possession and control of Staff.
 Appellants are persons who had loaned money to Staff under the above-described procedures. When Staff went into bankruptcy, appellants sought to have the promissory notes and trust deeds turned over to them. The trustee in bankruptcy refused . . . .
 625 F.2d at 282.
 
 
 [10]
 Justice Bradley wrote (quoting from a lower court): "It would be unreasonable to hold, that because one defendant had made default, the plaintiff should have a decree even against him, where the court is satisfied from the proofs offered by the other, that in fact the plaintiff is not entitled to a decree." Id. at 554 (internal quotation marks and citation omitted).
 
 
 [11]
 On the record before us, we cannot address the Trustee's contention that recent developments render this appeal moot. The Trustee may pursue his mootness argument before the bankruptcy court on remand.